**MORAN, Plaintiff-Appellant, v. WEHRUNG d. b. a. E. E. WEHRUNG PARKING CO., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22020. Decided March 26, 1951.

Harrison, Spangenburg & Hull, Cleveland, for plaintiff-appellant.

McKeehan, Merrick, Arter & Stewart, Cleveland, for defendant-appellee.

(DOYLE, J, of the 9th District sitting by designation in place of McNAMEE, J.)

**OPINION**

By DOYLE, J:

On the evening of May 17, 1947, John Moran, the plaintiff below, appellant herein, following an evening of night club entertainment, sought conveyance to or near his residence. A newly-made acquaintance offered the accommodation to

carry him in his automobile in the direction of his home. As the two commenced to leave the club premises, Moran turned into the men's room and the companion continued on, but stated that he would meet him across the street on the ramp leading to a parking area, where he presumably had left his car. Shortly thereafter, Moran departed from the club premises, proceeded across the street and up a ramp leading to a parking floor to look for his recent acquaintance (two structures having ramps for parking purposes were situated "across the street" approximately ninety feet apart). After several minutes of unsuccessful search on the ramp and parking area, rain commenced to fall, and Moran, while seeking shelter, fell from the outer extremity of the building to the ground twelve feet below and suffered serious injuries.

It appears that, as Moran stood on the parking space floor, he observed to the east the wall of a building which he thought was flush with the floor upon which he was standing. His conjecture was wrong, because the outer eastern extremity of the parking floor ended five or six feet from the wall of the building toward which he looked. Along this outer side of the parking floor timbers were anchored, which served to prevent automobiles from moving over the edge.

As heretofore stated, Moran sought shelter from the rain, after failing to find his companion or his car, and not being conscious of the space between the buildings ran toward the building wall to the east, tripped over one of the timbers heretofore mentioned and was thrown through twelve feet of space to the ground below.

Suit for damages for personal injuries was commenced against the proprietor of the parking area, with the following allegations of negligence.

(1) In failing to provide a suitable fence, railing, guard rail or parapet around said roof so as to protect patrons or frequenters thereof from the hazard of falling therefrom.

(2) In failing to provide suitable lights or illumination, so as to reveal the presence and position of the edge of said roof;

(3) In placing certain large timbers at and around the edge of said roof in such a position that persons walking thereon in the night season were likely to trip, stumble and fall.

(4) In placing said timbers in such an irregular fashion as to likely mislead persons walking thereon in the night season as to cause them to stumble and fall.

(5) In failing to give to the plaintiff warning of the hazards and dangers hereinbefore set forth.

(6) In failing to inspect the condition of said timbers and to cause them to be relined after they had been shoved around in irregular fashion by automobiles parked thereon.

(7) In failing to promulgate and enforce reasonable rules for giving warning to persons having occasion to be on the roof in said night season.

(8) In failing to provide for the plaintiff, as a frequenter of said premises, a place which was reasonably "safe" within the terms and provisions of §§871-13, 871-15 and 871-16 GC.

Issues were joined by the answer of the defendants; trial was held and a judgment was entered for the defendant upon a general verdict of the jury. From this judgment in the Court of Common Pleas of Cuyahoga County appeal was perfected to this court on questions of law.

The so-called "frequenter" statutes, §§871-13, 871-15 and 871-16 GC, are claimed by the appellant to apply to the facts in this case and error is claimed through the refusal of the court to make such application.

In this connection it must be observed that the injured litigant was not an employee or a workman of any kind on the parking area premises in a capacity connected or associated with work or labor. He was there solely in his own interest, for his own convenience, and entirely disassociated from work or employment.

**Sec. 871-13 (parag. 11)** GC provides in part:

"The term 'safe' and 'safety' as applied to any employment or a place of employment, shall mean such freedom from danger to the life, health, safety or welfare of employees or frequenters **as the nature of the employment** will reasonably permit * * *."

**Secs. 871-15** and **871-16 GC** impose definite standards of conduct upon the proprietor or owner of a place of employment to make his place of employment as free from danger for employees or frequenters as the nature of the employment will reasonably permit.

These sections of the Code are in pari materia and impose specific standards of care upon "employers" to protect workmen from harm and impose specific duties upon such "employers" to provide safe places for them to work.

In addition to the duty of an employer to workmen under the statutes, it is claimed that the same duty is owed to persons other than workmen who are classified as "frequenters" under **§871-13, paragraph 5,** GC. This provision of the Code appears as follows:

"The term 'frequenter' shall mean and include every person, other than an employee, who may go in or be in a place

of employment under circumstances which render him other than a trespasser."

It is obvious that the language standing alone could apply to any person who is not a trespasser, but when consideration is given to the evil which the entire legislation is designed to remedy, such object designed to be reached by the statutes must limit and control the literal import of the terms and phrases employed. The entire legislation is calculated to safeguard workmen and other persons connected in some way with the transaction of work or business with the employer or in his place of employment and was never intended to place additional duties upon business proprietors or employers for the benefit of gratuitous licensees on such proprietor's premises solely for purposes of their own. The statutes apply only to workmen, invitee or business visitors, as defined in Sec. 332, Restatement of the Law (Torts, Negligence 897).

If the statutes were held to benefit gratuitous licensees then a much greater burden would be placed upon employers of workmen in the conduct of their business than is placed upon other proprietors and owners of property.

It will be again observed that it is not shown by the record that the claimed prospective host of the injured person had used the parking facilities and consequently had asked him to come on these premises. This circumstance would make him at the most a gratuitous or bare licensee.

It is our conclusion that the statutes mentioned which appear under the title "Industrial Commission" are not applicable to the facts before us.

As stated, it appear from the evidence that reasonable minds could conclude only that the injured claimant was, at the time of the injury, at most a bare licensee on the premises of the defendant.

If it may be said that the fortuitous circumstances creating a prospective relationship of guest and host brought into existence for the prospective guest rights greater than those of a bare licensee when on the premises upon which the host's car was parked, it must be noted that, in the case before us, there is no evidence that the prospective host had parked his car in the defendant's premises. For aught that appears, it could have been parked in another nearby area "across the street" from the night club.

2. The Supreme Court of Ohio in **Sharp Realty Co. et al v. Forsha, Jr., a minor, 122 Oh St 368,** announced, per curiam:

"Until the case of **Hannan, Admr. v. Ehrlich** * * * **(102 Oh St 176)** is reversed or modified, we are required to follow the rule therein announced."

The rule "therein announced" has not to date been reversed or modified and the requirement which the Supreme Court placed upon itself is likewise a requirement of this court. The rule is:

"A licensee takes his license subject to its attendant perils and risks and the licensor owes him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril; he should not be exposed to hidden dangers, pitfalls or obstructions."

3. The writer of this opinion, in **Elliman v. Gombar, 86 Oh Ap 352,** discussed the applicability of the rule of Hannan Admr. v. Ehrlich, to the facts there presented. That discussion is equally applicable to the facts in the instant case and are incorporated herein by reference.

4. It is the conclusion of the majority of this court that the only duty owed the appellant by the proprietors of the parking business, was to not intentionally, wilfully, wantonly or through active negligence, create pitfalls or hidden dangers, or cause such conditions to arise. We find that this duty was not violated. The trial court should, as a matter of law, have arrested the case from the jury and entered a judgment for the defendant. Under these circumstances errors of which complaint is made need not be considered.

The judgment is affirmed. Exc. Order see journal.

SKEEL, PJ, concurs.
HURD, J, dissents.

### DISSENTING OPINION

No. 22020.   Decided March 26, 1951.

HURD, J.   (Dissenting.)

As indicated by the majority opinion, the court affirmed the judgment in this case because it holds that the trial court should, as a matter of law, have arrested the case from the jury and entered judgment for the defendant, and by reason thereof, errors of which complaint is made need not be considered.

The assignments of error are as follows:

"1. The court erred in refusing to charge on the 'frequenter' statute;

"2. The court erred in refusing to give plaintiff's request to charge No. 1

"3. The court erred in its general charge to the jury.

"4. The court erred in giving an erroneous interrogatory to the jury;

"5. The court erred in further instructing the jury on the erroneous interrogatory;

"6. The court erred in communicating instructions to the jury relating to this interrogatory without notifying counsel for either side that he was going to do so;

"7. The court erred in refusing to grant a mistrial."

The concluding paragraph of the majority opinion reads in part as follows:

"It is the conclusion of the majority of this court that the only duty owed the appellant by the proprietors of the parking business, was to not intentionally, wilfully, wantonly or through active negligence, create pitfalls or hidden dangers. or cause such conditions to arise. We find that this duty was not violated. * * *."

Disagreeing with this conclusion I feel it my duty respectfully to dissent from the opinion and judgment herein rendered.

It should be understood that the parking area in question from which the plaintiff fell to an alley below, is located upon the roof of a building which extends from the south side of Vincent Avenue north to the south side of Superior Avenue. The absence of any rail along the eastern edge of this roof made an issue presented by the pleadings and the evidence as to whether or not the employer had used reasonable care to furnish a safe place of employment in accordance with §§871-13, 871-15 and 871-16 GC.

The majority opinion is confined to a discussion of the applicability of the above cited sections of the Code and holds in effect that the same are not applicable to the facts and circumstances of this case, and that the plaintiff is not, as a matter of law, entitled to the benefits of the frequenter statute.

In my opinion, the language employed by the legislature in the frequenter statute (Sec. 871-13 GC), which is quoted in the majority opinion, is so plain and unambiguous, and its meaning is so clear, that judicial interpretation is not necessary or required. The record clearly shows that the defendant is an "employer" and that the accident occurred in "a place of employment," within the meaning of the statute. Now it cannot be said, as a matter of law, that the plaintiff under all the circumstances of the case was a trespasser, although a jury may so find as a matter of fact. The statute excludes only "trespassers" from its operation, in a place of employment.

It is my view that appellant was entitled to a charge on the "frequenter" statute, as requested and that it was prejudicial error to refuse the same.

In view of the holding of the majority of the court in the majority opinion, it would serve no useful purpose to discuss in detail the other assignments of error, although all the members of this court are of the opinion that some of these assignments of error have considerable merit, particularly Assignment of Error No. Six, namely, that the "court erred in communicating instructions to the jury, relating to an interrogatory, without notifying counsel for either side that he was going to do so."

For the reasons stated therefore, it is my conclusion that the judgment should be reversed and the cause remanded for further proceedings according to law.