**PATTON, Admr., Plaintiff-Appellant, v STANDARD OIL COMPANY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20083.   Decided Feb. 4, 1946.

Bernsteen & Bernsteen, Cleveland, and Charles Auerbach, Cleveland, for plaintiff-appellant.

McAfee, Grossman, Hanning and Newcomer, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, P. J.

This appeal on questions of law is taken from a judgment of the common pleas court wherein, at the conclusion of the plaintiff's case, the court directed the jury to return a verdict for the defendant.

The plaintiff's amended petition alleges that on the 7th day of June, 1940, and for some time prior thereto, the defendant was the owner of a vacant parcel of ground at the southeast corner of Lorain Avenue and West 130th Street in the City of Cleveland.   That some time prior to said date, the defendant placed four large cylindrical gasoline tanks on the lot which were to be used as a part of the equipment for a gasoline station to be erected on said lot.   The tanks were placed in close proximity to each other and were not in any

manner fastened, braced or secured. The largest tank weighed about 3409 pounds and was placed against and parallel to a fence running along the south line of the property which fence separated the defendant's property and the playground of a public school which school faces on the east side of West 130th Street. The westerly end of this tank was from 15 to 20 feet east of the east sidewalk line of West 130th Street. The tank which deceased was rolling at the time of his death, as hereinafter described, and which weighed 2320 pounds, had been placed perpendicular to and against the west end of the tank next to the fence. Another tank weighing 1150 pounds had been placed immediately to the east of 2320 pound tank and was against and parallel with the tank first described. The fourth tank weighing 1150 pounds was placed perpendicular to the fence and was against the easterly end of the first and third tanks above described.

The plaintiff's decedent, a boy of about fifteen years of age, together with two other boys, were on the evening of June 7, 1940, playing on and about these tanks. The decedent got upon the one which was parallel to West 130th Street (the second tank above described) and moved it toward West 130th Street (in the manner of log rolling). When he had gotten almost to West 130th Street he reversed his direction and started back toward the other tanks. As he came near the place from which he had started he attempted to jump from the rolling tank to the end of the smaller tank just to the east. He missed his step and fell in front of the tank he had just left which continued to roll, whereby the decedent was crushed and as a result he died within a few hours.

The plaintiff alleges there was a slope of the ground where the tanks were placed and that because the tanks could be easily moved, were of great weight and close to a much travelled public highway, and were placed on premises where children were accustomed to play, and adjacent to a school play ground, they constituted a dangerous condition to pedestrians and school children and as there placed constituted a nuisance and a trap. The plaintiff further claims that the defendant knew, or, by the exercise of ordinary care, should have known that under the circumstances children would make use of the tanks as a place to play and failed to secure the tanks or prevent the children from playing thereon, and its negligence in this regard was the direct and proximate cause of decedent's death.

The defendant's answer denies negligence on its part and alleges that the negligence of the deceased proximately contributed to his death. The plaintiff filed a reply denying negligence on the part of the decedent.

Upon trial, the plaintiff produced evidence describing the lot, the position of the tanks and the manner in which the decedent met his death. The parties further stipulated in part as follows.

"1. From February 20, 1940, until the present time and on June 7, 1940. The Standard Oil Co., was and is the owner of a corner lot located on the southeast corner of Lorain Avenue and West 130th Street in the City of Cleveland, Ohio.

2. On May 29, 1940, there were delivered to The Standard Oil Company upon these premises four cylindrical underground storage tanks, weighing respectively 3490 pounds, 2320 pounds, 1150 pounds and 1150 pounds which The Standard Oil Company intended to have installed underground as storage tanks for the purpose of storing gasoline or other petroleum products. Said tanks were located upon said premises on the date of June 7, 1940.

3. On June 7, 1940, plaintiff's decedent, Martin F. Patton, Clifford Scott and John McFadden, on their way to attend an evening movie show, came upon said premises of the defendant, The Standard Oil Company at about 8:45 o'clock P. M., climbed upon said tanks which were then upon the premises and began to move the tanks by standing thereon and making them revolve in the manner of "log rolling." While the boys were in the process of rolling one or more tanks, Martin F. Patton, plaintiff's decedent, in attempting to jump from one rolling tank to another, missed his jump and fell to the ground and was crushed to death by the tank from which he had jumped."

Thereupon plaintiff, after further evidence as to the next of kin, (this being an action for wrongful death) rested his case and upon motion by the defendant the court directed the jury to return a verdict for the defendant.

It is the contention of the plaintiff that because of the proximity of the tanks to the public highway and the playground of a public school, and because children were accustomed to play upon the vacant lot and because the tanks could be moved easily and because of the defendant's failure to fasten the tanks to the ground or to take positive steps to prevent children from playing thereon, it was guilty of negligence which was the proximate cause of the death of decedent.

From the undisputed facts developed by the evidence and the stipulation, the tanks as delivered to the property did not create a dangerous situation. Their delivery was for a

lawful purpose and so' long as they were not disturbed by trespassers, an entirely static condition prevailed.

Situations like this have been presented to the courts of Ohio on a number of occasions, but in no case under facts similar to those here presented has liability been imposed upon the property owner. To hold otherwise would place an unwarranted burden upon the occupant of private property. One could not safely deliver building materials to his property without becoming liable to trespassers seeking to misuse his property and materials.

The supreme court in the case of **Railroad Co. v Harvey,** and **Swartz v Akron Water Works Co., 77 Oh St 234,** said in the first paragraph of the syllabus:

"1. It is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation but merely by sufferance."

And in the body of the opinion, beginning on page 248, quoting in part from an opinion of Judge Cooley in Powers v Harlow, 53 Michigan 507, we find:

"That a landowner is under no obligation to use care to protect a trespasser, is a broad and until recently undisputed rule without exceptions; liability for injuries sustained by such, being limited to cases of intentional or wanton injuries. The rule with this limitation, is sustained today by the great weight of authority." "It is contended by some law writers and it has been held in some cases, that an exception exists in favor of children of tender years. The very reasons given should lead us to doubt the solidity of the foundation upon which these cases rest, especially where none of the reasons are of recognized authority * * * *. The assertion that the weight of authority supports the plaintiff's contention in this case seems to us incorrect * * *." "It may be true that in cases involving turn-tables, a majority of the cases, which are necessarily few, have followed the case of Railroad Co. v Stoute, supra, 17 Wallace 657; but there should be a legal principle underlying the rule laid down in that case, and that principle has been assiduously sought for by some of the courts, without success, as we have seen. * * * *."

"The term 'attractive nuisance' as applied is a new one in the books, and the plausible application of the well-known principle that one must so occupy his own as not to do harm to the rights of others, should not be construed to so restrict

the use of private lands as to make it necessary to guard and protect trespassers. * * * * *."

"It has been his duty to guard those licensed to enter, but beyond that he has not been required to do. In our anxiety to prevent personal injuries we should not go so far as to overturn private rights."

Following the Harvey case supra, the case of **Hannan, Admr. v Ehrlich, 102 Oh St 176** came before the supreme court. In the Hannan case, the action was brought claiming that defendant's negligence in maintaining a sand pit on its premises was the direct and proximate cause of decedent's death. The defendant maintained a sand pit on his premises which had been excavated to a depth of 35 to 40 feet and the bank was perpendicular and at times overhanging in places. And while the pit was some distance from the street it was alleged that children were accustomed to enter the premises and use the same as a playground, all of which defendant knew, "or by the exercise of ordinary care should have known of such use and the condition of such excavation and walls thereof, and permitted, allowed and acquiesced in the use of said sand bank and grounds by said children in making a playground upon said premises."

The decedent, a boy of eight years of age, was playing at the foot of the bank when a cave-in occurred causing his death. In affirming the trial court where a demurrer had been sustained to plaintiff's petition and final judgment for the defendant entered, the supreme court in paragraphs 3, 4, 5 and 6 of the syllabus held:

"3. Actionable negligence exists only where the one whose act causes or occasions the injury owes to the injured person a duty created either by contract or by operation of law, which he has failed to discharge.

4. A licensee takes his license subject to its attendant perils and risks, and the licensor owes him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril; he should not be exposed to hidden dangers, pitfalls or obstructions.

5. The foregoing rule is not altered by the fact that the injured child is a child of tender years."

In the Harvey case and in the Hannan case, supra, no reference seems to have been made to the case of **Railroad Company v King, 68 Oh St 210,** where the supreme court had

for consideration circumstances very similar to those in the Hannan case.

The railroad company had partly leveled off a tract of ground, leaving a bank ten or twelve feet high. The level part of the land, up to the bank, had been used by the boys of the community as a baseball grounds and young boys who were too small to play ball would watch the game and play at the foot of the bank. The bank caved in and injured King, a boy of twelve years of age. While some of the dicta expressed in the opinion on the subject of "attractive nuisance" which is in conflict with the court's opinion in the Harvey case, was thereby to the extent of the conflict modified, yet the syllabus of the case provides:

"The owner of an unenclosed tract of land within a city, which has been graded to a level, leaving a bank on one side of the premises, to which premises adults are not invited, but suffered to resort, for the purpose of playing baseball which amusement attracts to the grounds and along the bank young boys to witness the game, is not liable for injury to one of such boys, caused by the caving or falling of the top of the embankment, where its condition does not, to the knowledge of such owner, indicate a reasonable probability of such result."

In the case of Ryan v Tower, 128 Mich. 463, the defendant owned a small pump house. "In the house was a small overshot waterwheel. The plaintiff, a girl about twelve or thirteen years of age, was in the habit of passing this pump house on the way to school with her brothers and sisters; going across lots through the field, because it was nearer. For some time previous to the time of the accident, a hole existed in the stone wall of the house enclosing the wheel, through which the children went to play on the wheel. On the day in question, the brothers of plaintiff, on the way from school crawled through this hole and mounting the wheel were able by their weight to turn the wheel part way round and back. A younger sister, aged eight years, got caught between the wheel and the wheel pit. The plaintiff heard her screams and went through the hole to her succor and aided in rescuing her and was herself injured. In the opinion, Hooker J., after reviewing a number of turntable cases, says:

"Here we have the doctrine of the turntable cases carried to its natural and logical result. We have only to add that every man who leaves a wheelbarrow, or a lawnmower, or a

spade upon his lawn; a rake with its sharp teeth pointing upward, upon the ground, or leaning against a fence; a bed of mortar prepared for use in his new house; a wagon in his barnyard, upon which children may climb, and from which they may fall; or who turns in his lot a kicking horse, or a cow with a calf—does so at the risk of having the question of his negligence left to a sympathetic jury * *."

In all of these cases the children involved were much younger and less able to understand the dangers which confronted them than in the case at bar. Here we have a young man of fifteen years of age, playing with a tank which weighed over a ton. Smaller children could not have endangered themselves because under the circumstances they could not move an object of such weight and size. In attempting to play with this tank, the decedent was old enough to know of the dangers in which he voluntarily placed himself. The tank as it was placed upon the ground presented no danger whatever to any one, even a trespasser, until the trespasser, by his own act, created the danger by attempting to roll it from place to place. Certainly against such dangers the defendant owed no duty to attempt to protect the plaintiff's decedent upon the authority of the cases cited above, which represent the great weight of authority upon the subject.

The plaintiff relies upon four cases to support his contention that the defendant owed plaintiff's decedent the duty of ordinary care to protect him against the claimed dangers present under the circumstances:

Ziehm etc v Vale, 98 Oh St 306.

DeGroodt Exec. v Skrbina Admr., 111 Oh St 108.

Coy v C. D. & M. Electric Co., 125 Oh St 283.

Gottesmann v City of Cleveland, 142 Oh St 410.

These cases are clearly distinguishable from the case at bar.

In the Ziehm case the defendant parked his automobile at the curb and while he was absent, two or three small boys got on the running board. The children asked for a ride when the defendant returned to his automobile, but he refused and chased them away. It was the claim of the plaintiff that he, an infant of four and one-half years of age, remained on the running board as the defendant started to drive away. Here the court held that the static condition of defendant's property was made perilous "'by the active and negligent operation thereof by the defendant."

In the DeGroodt case and in the Gottesmann case, supra, the place where the accident in each case happened, was on

public property where the plaintiffs had a legal right to be and the defendant therefore owed the duty of ordinary care which certainly is not true as to a trespasser.

And in the Coy case, supra, the defendant maintained a dangerous electrical transformer in close proximity to the street and permitted the fence to become in a state of disrepair so that persons could enter. The court held:

"When the static condition of premises is made perilous by the active and negligent operation of apparatus thereon, by the person owning or controlling the same, a liability arises for injury resulting therefrom."

In each of these cases the supreme court cites the Harvey case. In each case the court distinguishes the case then being considered from the Harvey case but in no instance does the court attempt to modify its holding.

For the foregoing reasons we conclude that upon the undisputed facts as shown by plaintiff's evidence and the stipulation, the court correctly directed a verdict for the defendant.

The judgment of the court of common pleas is therefore affirmed.

LIEGHLEY, J., concurs.
MORGAN, J., dissents.

MORGAN, J., (Dissenting)

Martin Patton, a boy fourteen years of age, lost his life on the evening of June 7, 1940, while rolling an empty gasoline storage tank on a lot owned by defendant, located at the southeast corner of Lorain Avenue and West 130th Street in the City of Cleveland. This lot on the west fronted on the east side of West 130th Street and on the north, on the south side of Lorain Avenue. Both the West 130th and Lorain Avenue frontages were unfenced. On the east side of the lot was a building known as John's Fruit Market. On the south side of the lot was a wire fence six feet high separating the lot from the playground of Nathanial Hawthorne Public School.

The defendant purchased this lot on February 20, 1940. On May 29, 1940, the defendant brought on the lot four cylindrical underground storage tanks, the first of which weighed 3490 pounds, the second 2320 pounds and two others 1150 pounds each. The largest tank was placed against the wire fence separating the lot from the school yard. The second

tank was placed at right angles to the first tank about 15 feet east of the West 130th Street sidewalk.

It is undisputed that these tanks were not fastened or secured in any manner.

As soon as the tanks were delivered on the lot the boys who frequented the school yard began to play tag on and over the tanks. They quickly discovered that the second largest tank could be rolled by one or more boys, with their feet. They were in the habit of rolling the tank to the West 130th Street sidewalk and then back again and they continued to do this for "about a week," or until the death of Martin Patton.

On the evening of June 7, 1940, the decedent, Martin Patton with John Patrick McFadden, stopped at the lot intending later to proceed to a picture show. They found the sport of rolling the tanks so exciting that they continued it for some time until it became too late to go to the picture show. Martin Patton was rolling the second largest tank with his feet to the West 130th Street sidewalk and then back again, until on a return trip he attempted to jump to one of the smaller tanks from the tank he was rolling. However, he missed his footing, with the result that he was crushed by the tank which he had been rolling.

Michael Patton, the father of Martin, as administrator of the estate, brought this action against the Standard Oil Company, as owner of the lot, for damages for the wrongful death of Martin Patton.

In his petition the plaintiff alleged that:

"By reason of the position of said tanks, as well as their weight and the ease with which they could be moved because of the slope of the ground upon which they were placed, and because of their close proximity to the intersection of the two highly traversed highways aforesaid, and also because of their proximity to the public school playground, they constituted a dangerous condition to pedestrians, school children, were a nuisance and a trap.

Plaintiff further says that the defendant knew, or in the exercise of ordinary care, ought to have known of the condition aforesaid, and that for a long time prior to June 7, 1940, children in the neighborhood of the aforesaid intersection, in close proximity to the public school playground, were accustomed to and did play upon the said vacant lot; although the defendant knew, or in the exercise of ordinary care, should have known, of the conditions aforesaid, and that children of tender age would make use of such tanks for play upon the vacant lot aforesaid, nevertheless, it failed to brace the tanks

or to fasten the same to the ground or to fence them, or to cause any of such things to be done so as not to permit children to jump and play thereon and entrap them.

\* \* \* \* \*

Plaintiff further says that although the defendant knew or in the exercise of ordinary care, ought to have known, that the plaintiff's child, in common with other children, played in and about the said tanks on the permises afore-described, and that they would do so, nevertheless, permitted the plaintiff's child and other children to continue to do so and failed to warn plaintiff's child or the other children of the danger of playing in and about said tanks, and to prevent them doing so, by securing the tanks or fastening them to the ground or fencing the premises around said tanks, or causing the same to be done, and that the acts of negligence aforementioned on the part of the defendant were the direct and proximate result (cause) of the death of plaintiff's child."

At the conclusion of plaintiff's case the defendant made a motion for a directed verdict which was granted by the court and the plaintiff appealed to this court.

In granting the motion for a directed verdict, the trial court stated:

"It is certainly clear that the decedent was a trespasser upon the property of the defendant."

Also,—

"I don't believe that the defendant could be expected to anticipate that when those tanks were placed as they were placed upon these premises that boys would do what this decedent did do."

Also,—

"I think if I would hold that there was liability in this case anyone who placed any materials upon his premises or did work upon his premises would be almost required to place a guard upon the premises."

If, on the facts of this case, Martin and the other children playing with the tanks were trespassers on this lot, or if the defendant could not have been expected to anticipate that boys would play with these tanks, when placed on the lot, and accordingly was not required in the exercise of ordinary care to fasten or to make the tanks secure, or, if the ef-

fect of the verdict in this case for plaintiff would be to require any person placing materials on his own property or doing work on his own premises, to place a guard on the premises, then the defendant in this case was entitled to a directed verdict.

The duty which the property owner owes to a trespasser is "to refrain from wilful wrongdoing **(Hannan Admr. v Ehrlich 102 Oh St 183).** There is no evidence in this case that the defendant was guilty of "wilful wrongdoing."

In my opinion, the evidence and the stipulated facts in this case show clearly that the boys playing with these tanks were not trespassers. During the time the defendant was the owner of the lot, and previously, the public generally had made use of this lot in various ways, without objection or hindrance by the owner. A photograph of the lot in evidence shows a driveway extending from Lorain Avenue to West 130th Street about ten feet wide, through the lot. Automobiles occasionally proceeded across the lot from one street to another over this driveway. There was a bus stop at the corner and passengers boarding and alighting from the busses frequently passed through the lot. The patrons of John's Fruit Market just east of the lot were in the habit of parking their cars on the lot also without objection or hindrance.

However, for the purposes of this case, the important public use of the lot was the use made of it by the boys using the school playground immediately to the south of the lot. The entrance to the schoolyard was on West 130th St about 300 yards south of Lorain Avenue; one of the boys testified that they never went to this entrance but crossed defendant's lot and then the boys "used to hop over the fence to get into the school yard." The baseball diamond in the school yard was just south of the wire fence and home plate was located "right in the corner" or just south of the defendant's lot. The evidence shows that foul balls frequently were knocked over the fence and the boys were in the habit of climbing over the fence to retrieve the foul balls. By reason of the location of the baseball diamond on the school playground, defendant's lot at the time of this accident was virtually a part of the backfield of the baseball playing field. There was a sand pile at the east end of the lot and a "big gang" of boys used to jump from the roof of John's Fruit Market to the sand pile. One boy testified that "both he and Martie used to do that."

The evidence is uncontradicted that defendant and the previous owner of the lot permitted, allowed and acquiesced in this use of the lot by the general public and especially by the boys who frequented the school playground.

In view of all these facts did the defendant owe any duty to the boys who crossed or occupied this lot for purposes of play, to make secure the gasoline tanks which defendant moved on the lot? This question is answered by two Ohio cases: **Harriman v Railway Co., 45 Oh St 11, and DeGroodt v Skrbina, 111 Oh St 108.**

In the DeGroodt case, a contractor erected a barricade on a street for the purpose of preventing travel upon a newly constructed pavement, consisting in part of an unsecured two horse dump wagon, in a vicinity where children were accustomed to play. The children began to move the dump wagon about, and a child was injured thereby. The court held that if reasonable care was not exercised by the contractor in leaving the dump wagon in a secure condition, thereby causing the death or injury of a child, the contractor would become liable.

This case would be a square authority for holding the defendant liable, if the gasoline tanks had been left by defendant on the edge of the sidewalk and Martin Patton had lost his life in rolling the tanks on the street. Boys, however, would be not more likely but rather less likely to play with and move the tanks when placed on the street than when placed as they were on the unfenced lot, unsecured and unguarded within 15 feet of the sidewalk.

Although in the DeGroodt case the child was injured while playing in the street, the court followed and relied on the case of **Harriman v Railway Co., 45 Oh St 11** in which case the child was injured on private property. The court said in the DeGroodt case at page 110:

"The real questions in this case have been somewhat confused by the evocation and discussion of the principle announced in **Railroad Company v Harvey, 77 Oh St 235, 83 N. E. 66.** Under the allegations of the second amended petition, sustained to some extent by the testimony of plaintiff's witnesses, the rule anounced in **Harriman v Railway Co., 45 Oh St 11, 12 N. E. 451, 4 Am. St. Rep. 507,** is more applicable."

Likewise, and for the same reason the instant case is not controlled by the Harvey case but rather by the Harriman case.

In the DeGroodt case, supra, the following quotation from the Harriman case was repeated with approval:

"It is apparent that there may be a substantial differ-

ence between absolving the owner from the active duty of providing against the danger of accident to a trespasser upon his premises, or one who enters the same as a mere licensee, and giving him the same immunity when he knowingly places a high explosive and dangerous instrument or agent in the way that he knows the licensee—a child of tender years—is habitually accustomed to go, and where an ordinarily prudent person would reasonably expect him to go, and be thereby injured."

In the DeGroodt case the court also cited and quoted with approval from the case of Kelley v Parker-Washington Co. 107 Mo. App. 490, 81 S. W. 631, the following:

"It is negligence for the owner to leave dangerous machinery on his premises in a condition likely to cause injury; and a contractor for grading a street who leaves a scraper in the street liable to inflict injury on children attracted thereby, is guilty of negligence and such children are not trespassers, since the contractor's possession of the street is not exclusive."

The road scraper in the above case and the wagon in the DeGroodt case were in a static condition and would cause no harm when permitted to remain in such condition, yet, in the DeGroodt case the supreme court held that if the defendant in that case knew, or should have known that children would or might make use of the dump wagon "a legal duty might arise which would require him to avoid that peril. In that respect he would be required to act as reasonably prudent men act under like circumstances."

In the Harriman case the action was brought to recover for injury to a child caused by an explosion of a signal torpedo which had been left on the defendant railway company's right of way at a point where the public, including children, had been accustomed to pass. The supreme court held in that case that so long as the railway company acquiesced in such use of its property by the public it would be held to anticipate the continuance thereof and would be bound to exercise due care to avoid injury to persons so using the right of way.

In the Harriman case the signal torpedo would have been harmless and would not have exploded if a boy, while passing on the road, had not picked it up and handled it. Likewise, the gasoline tanks on defendant's lot would have injured no one if they had not been moved and rolled by the boys whose presence on the premises was acquiesced in by the defendant.

In the Harriman case at page 21 the court said, and the language is applicable to the instant case:

"An owner may, without protest or objection, permit his premises to be used by the public so long, in the same condition, that his acquiescence in the continuation of such use, until some warning or notice on his part, might reasonably be expected; and if under such circumstances and with knowledge of the same he should place or leave some new, dangerous structure or instrument in the way so used, and from which he might reasonably apprehend danger of injury to those accustomed to such use, can he claim exoneration from liability in case such injury shall occur, on the ground that the law imposed no duty on him to keep his premises in a safe and suitable condition for trespassers and licensees who enter by permission only?"

This is not a case where boys were attracted to this property by a turntable or other "attractive nuisance" but a case where in the language of the Harriman case the public had been permitted to make use of the premises so long that the "acquiescence" in the "continuation of such use * * * might reasonably be expected."

Just as in the DeGroodt case there was a legal duty on the defendant to fasten or to secure the dump wagon which it was using as a barricade, so also and for the same reason, there was a legal duty on the part of defendant herein to fasten and to make secure the gasoline tanks which it moved on its premises because who can say that boys were not just as likely to move and roll gasoline tanks on this private lot as children were likely to move the dump wagon on the street?

If the defendant had placed these tanks on the school playground just south of the wire fence, or only a few feet away from where they were actually placed, would there not be an obvious duty on the part of defendant to make secure such tanks? The fact is that the tanks when placed on defendant's lot so near to the public street and to the playground were just as accessible to the boys as if they had been placed on the playground.

It is not necessary to hold on this appeal that the defendant, as a matter of law, was under the duty to secure these tanks. I do maintain that whether or not defendant in this case, in the exercise of ordinary care under all the circumstances should not have made these tanks secure was a question that should have been submited to the jury.

That the instant case is not an isolated case is shown

by the fact that a similar case was considered by this court and also by the supreme court in **Gottesman Admr. v City of Cleveland, 142 Oh St 410.** The Gottesman case is now in this court on an appeal by the defendant from a verdict for the plaintiff at the second trial of the case.

In the majority opinion in the instant case, it was stated:

"The decedent who was 14 years of age was old enough to know of the dangers in which he voluntarily placed himself."

The defendant in this case set up the defense of contributory negligence in its answer, but inasmuch as the motion for a directed verdict was granted at the close of plaintiff's case the question of contributory negligence was not reached. The motion was granted by the court solely on the ground that there was no evidence to go to the jury on the question of defendant's negligence.

I do not believe that as a matter of law the decedent was guilty of contributory negligence upon the facts disclosed by this record. Of course the rolling of the tanks involved an element of danger and risk. This was what made rolling the tanks attractive to a healthy 14 year old boy like Martie Patton. Does any one imagine that boys would be deterred from rolling the tanks because of the risk involved? It was largely the element of risk and danger that impelled the boys to roll the tanks. Likewise it was this very element of risk and danger that should have caused the defendant to anticipate that the boys frequenting the lot would be lured to roll them.

The statement by Cooley, J., in Powers v Harlow, 53 Mich. 507, quoted with approval in the Harriman case supra, at page 27 is quite pertinent here:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them, must calculate upon this and take precautions accordingly. If they have exposed to the observation of children anything which would be tempting to them, and which they, in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken."

One of the latest cases considered by the supreme court involving an action in behalf of a child for an injury sustained

on defendant's premises, is Coy v Electric Co. 125 Oh St 283. While the facts in the case are to be distinguished from those of the instant case, it is worthy of mention that the court in its opinion in that case cited with approval and quoted from the case of Haywood, an infant, v Manufacturing Co. 142 Va. 761, 128 S. E. 362, as follows:

"We think the use of dangerous agencies and instrumentalities either in the street or so near thereto as to be easily reached by pedestrians passing that way, places upon those responsible for the presence there of the dangerous instrumentalities the duty of giving warnings to and of safeguarding the public by using such mechanical contrivances as will effectually prevent injury to persons or property."

The Virginia court found no difference between the case of a dangerous instrumentality in a street (such as was the dump wagon in the DeGroodt case supra) and an instrumentality "so near thereto as to be easily reached by pedestrians passing that way." In the instant case the fatal tank was placed by defendant only 15 feet from the sidewalk and it was rolled by the boys to and back from the very edge of the sidewalk.

A wholly different case would be presented in this action if defendant had left its tanks on a lot not contiguous to a school playground and where the owner had not acquiesced in the use of the lot by children and adults. As was said by the supreme court in the case of Cleveland Railway Co v Kozloski, 128 Oh St 449:

"Every action for personal injuries is like the proverbial tub, 'it stands on its own bottom.' "

Keeping in mind the holding of the supreme court in Cleveland Railway Co. v Kroftz, 125 Oh St 126 (and in other cases) that at the conclusion of plaintiff's evidence "she was entitled to have the evidence given the most favorable interpretation to her contention and if the proof and inferences were such that fair minded men could at least reasonably arrive at different conclusions therefrom * * * the facts is issue were triable by jury," it is my opinion that the trial court erred in this case in directing a verdict at the conclusion of plaintiff's evidence and the case should be remanded for a new trial.