STEVENS, ADMR., PLAINTIFF, *v.* OHIO FUEL GAS CO., DEFENDANT.

Common Pleas Court, Pickaway County.

No. 22496.   Decided September 26, 1960.

*Mr. Craig Aalyson* and *Mr. Russell Volkema,* for plaintiff.
*Mr. Carl C. Leist,* for defendant.

AMMER, J. This is an action filed by the administrator of the estate of George M. Stevens for wrongful death in which the second amended petition is to the effect that the defendant constructed, possessed, maintained and controlled an 8 inch pipe line situated alongside and openly affixed to a public bridge on Riverside Drive in the city of Circleville, which bridge and pipe line spans one Hargus Creek. The plaintiff further alleges that said pipe line was accessible to children from both sides

of Hargus Creek and that children frequently entered the area wherein the pipe line was situated and would walk on said pipe line across said creek and that these facts were known or with the exercise of ordinary care and diligence should have been known to the defendant and that the defendant did nothing to conceal the said pipe line or to prevent children from entering thereon.

Plaintiff further states that on May 5, 1958, that the deceased, age 8 years, in the company of other children of tender age went upon said pipe line and while playing thereon slipped and fell therefrom into the creek below. As a result thereof the plaintiff's decedent suffered various injuries and subsequent death.

To this second amended petition has been filed a demurrer by the defendant on the ground that the second amended petition does not state a cause of action.

The question before the Court is whether or not the demurrer should be sustained as to the amended petition. The issue to be determined is whether or not the second amended petition states a cause of action and whether or not there is any liability on behalf of the defendant in view of the facts set forth in the second amended petition.

It is a well established principle of law in this state that "an occupier of land, either as lessee, tenant, or by sufferance, owes no duty to a trespasser or licensee upon such land except to refrain from wanton, willful or reckless misconduct which is likely to injure him." This principle is clearly set forth in *Railroad Co.* v. *Harvey*, 77 Ohio St., 235. The principle above enunciated however refers to a case of injury on private property relative to trespasser, licensee and invitee.

Other principles are set forth relative to injuries which occur as to minor children in or near public streets or places. In 39 Ohio Jurisprudence (2d), 608, the following is stated:

"In regard to liability for injuries to children, the view has been taken in Ohio that there is a material difference between trespassing upon private premises, and using private property left unguarded and unattended, either temporarily or

permanently, in a public highway. While the presence of children on private property cannot always be reasonably anticipated, their presence upon public streets and alleys is to be invariably expected, so that it is incumbent upon the owners of property in such locations to take precautions for their safety and have dangerous instrumentalities or nuisances properly protected or guarded, when they are upon or partly upon or very close to streets where the owner knows that children are in the habit of playing, and where the instrumentalities are in plain view and are easily accessible to children. Accordingly, it has been held that the rule that a defendant is not liable for injury to children who come upon his premises without invitation and merely by sufferance does not apply to machinery or equipment left on the public streets. It has also been declared that the general rule as to nonliability as to a trespassing child has no application to a structure erected and maintained in a public place for the support of high tension wires carrying electricity. However, in an action for injuries sustained by a boy when a cantilever type of fire escape which overhung an alley fell while children were playing on it, it was said that if there were no means by which the boys could conveniently get upon the fire escape from the alley, the defendant would owe the boys no duty to keep the fire escape in repair or to warn them not to go upon it from the alley; therefore, in order to establish a duty upon the part of the defendant, it was necessary that it be established either directly or by reasonable inference that the means of access to the fire escape from the alley was such as to impliedly invite boys of that age to go upon such fire escape or at least that it was not unlikely that such boys would do so.''

Also in this respect as to the attractive nuisance doctrine a distinction is made in Ohio between visibly dangerous statical conditions and dangerous active operations as is set forth in 39 Ohio Jurisprudence (2d), page 610:

''Although the attractive nuisance doctrine, as such, does not obtain in Ohio, a well defined distinction runs through the

cases between injuries caused by a visibly dangerous statical condition, and premises where dangerous active operations are being carried on. If the statical condition of the premises is such that the dangers are easily perceived, no liability arises. For example, where defendant oil company placed, for subsequent installation, several heavy gasoline storage tanks upon land owned by it, a static condition was created thereby which imposed no duty upon such defendant as to a trespassing child who was fatally injured in attempting to roll one of such tanks. Other instances of visibly dangerous statical conditions giving rise to no liability include turntables, reservoirs, sand pits, and open elevator shafts.

"On the other hand, if the statical condition is made perilous by the active and negligent operation thereof by the owner, a different situation is presented. Greater care and caution must be exercised to prevent injuries to children upon premises where dangerous active operations are carried on, than upon premises containing a visibly dangerous statical condition. In fact, the principle that an owner is not liable to an infant who comes upon his premises without invitation, and who is injured there while playing, without his knowledge, with some instrumentality upon the premises, does not apply where the statical condition of the premises is made perilous by the active and negligent operation thereof by the owner. For instance, a cause of action is stated by allegations that defendant had about its premises an unused alcohol drum in which fluid remained, that children of the neighborhood were permitted to play with this drum, that the manager had knowledge that the children were lighting fires in the drum and with opportunity and appreciation of the danger he failed to prevent such conduct, and that by reason of such fire there was an explosion in the drum which killed plaintiff's child. However, in an action against the proprietor of a butcher shop for damages for personal injuries received by an infant while playing with an electric meat grinding machine, which it is alleged was being operated while unguarded, unprotected, and unattended, it is held error for the trial court to overrule a motion to direct a verdict for the defendant, where the evidence fails to show that the

proprietor had knowledge of the presence of the infant in the shop."

As to what constitutes an attractive nuisance in various cases relating to this doctrine is found in annotations in 36 A. L. R., 125, 23 A. L. R., 1141. In relation to pipes and pipe lines as to the attractive nuisance doctrine see 23 A. L. R. (2d), 1158. In another annotation in 145 A. L. R., 321, the following is set forth:

"No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct. Certainly a normal child nearly seven years of age—indeed any child old enough to be allowed at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because, to use the language of the Restatement, of their "immature recklessness" but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type."

"While the owner of premises may owe more duty to a child than to an adult coming upon his premises by implied invitation, yet he is not bound to guard every stairway, cellarway, retaining wall, shed, tree, and open window on his premises, so that such a child cannot climb to a precipitous place and fall off."

In the same annotation at page 322 the following is stated:

"As the title indicates, this annotation is concerned with the question whether an owner or occupant is liable, under the so called 'attractive nuisance' doctrine or a related principle, for injury to or death of a child who jumps or falls off a stationary object or structure upon which the child has climbed, where the cause of the accident is not attributable to a defective or hidden condition."

A further quotation from the same article at page 323 is as follows:

"The comprehensive annotation on attractive nuisances in 36 A. L. R., 34 (supplemented in 39 A. L. R., 486; 45 A. L. R., 982; 53 A. L. R., 1344; and 60 A. L. R., 1444), states by way of recapitulation and conclusion, at p. 294, that to make out a case against the person responsible for the danger, it must appear that (1) the injured child was too young to understand and avoid the danger; (2) there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where the children had the right to be; (3) there was a strong likelihood of accident; (4) the danger was one other than those ordinarily encountered; and (5) the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.

"In substantial accord is §339, Vol. 2 of Am. Law Inst., Restatement of the Law of Torts, which declares: 'A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children, because of their youth, do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.'

"In keeping with these generalizations, and especially with those indicating that in order to establish liability the danger must be one which is not obvious to or recognized by the child, decisions within the scope of this annotation are generally to the effect that, under the attractive nuisance doctrine or a

kindred principle, liability does not attach to an owner or occupant for an injury to a trespassing child who climbs upon and jumps or falls from a nondefective and stationary structure, at least where the structure is useful and properly located.''

This annotation cites cases in all jurisdictions relative to the attractive nuisance doctrine.

A case particularly in point is that of *Oil City and P. Bridge Co.* v. *Jackson*, 114 Pa., 321, 6 Atlantic, 128, in which a bridge company was held not liable for the death of a 7 year old boy who while walking upon an iron gas pipe located some distance above the floor of the carriageway of the bridge lost his balance and fell through an opening in the structure, since the company was not bound to maintain the bridge in such a manner as to prevent the possibility of an accident to a child.

In the case of *Harriman* v. *Railway Co.*, 45 Ohio St., 11, the Court held:

''that the petition stated a cause of action where a child of tender years was injured by an explosion of a torpedo, so negligently placed and left by the servants of the railroad company, at such point or place on its road, which was picked up by a boy nine years of age, while so passing on the road, and which exploded while being handled by him, in ignorance of its dangerous or harmful character.''

The Court in the first two syllabi of that case stated the following:

''Where a railroad company has for a long time permitted the public, including children, to travel and pass habitually over its road at a given point, without objection or hindrance, it should, in the operation of its trains and management of its road, so long as it acquiesces in such use, be held to anticipate the continuance thereof, and is bound to exercise care, having due regard to such probable use, and proportioned to the probable danger to persons so using its road.

''It is negligence for the servants of such railroad company,

wantonly and needlessly, and without notice, warning, or other precautions, to place and leave exposed to observation, at such point or place on its railroad, where the public, including children, are and have been so permitted by the company to travel and pass, an apparently harmless, but in fact highly explosive and dangerous object like a signal torpedo, easily picked up and handled by children and likely to attract them, and known to such servants to be such."

Of course, in that case there was actionable negligence by the railroad employees which is not present in the instant case.

In the case of *Patton* v. *Standard Oil Co.*, 45 Ohio Law Abs., 321, the syllabus therein reads as follows:

"Where defendant oil company placed several heavy gasoline storage tanks upon land owned by it for subsequent installation, a static condition was created thereby which imposed no duty upon such defendant as to trespassing child who was fatally injured in attempting to roll one of such tanks."

It is to be noted that in that case the injury occurred upon private property and there was no actionable negligence shown as to the defendant. In the case of *Hannon* v. *Ehrlich*, 102 Ohio St., 176, the Court stated the following in the syllabus:

"Actionable negligence exists only where the one whose act causes or occasions the injury owes to the injured person a duty created either by contract or by operation of law, which he has failed to discharge.

"A licensee takes his license subject to its attendant perils and risks, and the licensor owes him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril; he should not be exposed to hidden dangers, pitfalls or obstructions.

"The foregoing rule is not altered by the fact that the injured person is a child of tender years.

"Greater care and caution should be exercised to prevent injuries to children upon premises where dangerous active oper-

ations are carried on than upon premises containing a visibly dangerous statical condition.''

Other cases relative to the duty owed trespassers or licensees are *Soles, Admr.* v. *Ohio Edison Co.*, 144 Ohio St., 373, and *Mudrich* v. *Standard Oil Co.*, 153 Ohio St., 31.

It is now necessary for the Court to consider cases relative to liabilities for injuries to children in regard to structures, alleys, public streets or places. The first case in this respect is that of *Collins, Admr.* v. *Sutter*, 18 Ohio Law Abs., 27. The syllabus of that case reads as follows:

''While the presence of children on private property cannot always be reasonably anticipated, their presence upon public streets and alleys is to be invariably expected, so that it is encumbent upon the owners of property in such locations to take precautions for their safety and have dangerous instrumentalities or nuisances properly protected or guarded, when they are upon or partly upon or very close to streets where the owner knows that children are in the habit of playing, and where the instrumentalities are in plain view and are easily accessible to children.''

The Court in the opinion further stated the following:

''That plaintiff expected to prove that defendants owned and controlled a certain 2-story building fronting on the corner of N. Arlington and E. Market streets in Akron; that in the rear of said building there was an alley, and that the alley opened upon Kent street; that said alley was used by the tenants and occupants of the several buildings fronting thereon, * * *

''That defendants permitted said cable to become rusted and worn and in such defective condition that, while said stairway of said fire escape was moving up and down and one of the boys was near the top of the stairway, said cable broke and thereby caused said stairway to fall to the ground, onto the body of plaintiff's decedent, who was at the time standing on the

ground with several other boys watching the steps go up and down; and that plaintiff's decedent was thus pinned to the ground and injured to such an extent that he died about thirty minutes thereafter.

"A careful reading of the decisions involving the liability of the owners of property to children injured while playing on or about so-called attractive nuisances or dangerous instrumentalities, discloses that Ohio courts recognize the principle that the liability of such owners depends largely not only upon whether such nuisances or instrumentalities are located on private property or in public places, but also, when located on private property, upon their proximity to public streets or alleys; that is, whether or not they are located in plain view and are easily accessible from the street or alley, and also whether or not such owners had knowledge that children were in the habit of playing on or about such nuisances or instrumentalities. These distinctions are based upon the theory that, while the presence of children on private property cannot always be reasonably anticipated, their presence upon public streets and alleys is to be invariably expected, so that it is incumbent upon the owners of property in such locations to take precautions for their safety and have such instrumentalities or nuisances properly protected or guarded, when they are upon or partly upon or very close to streets where the owner knows that children are in the habit of playing, and where the instrumentalities are in plain view and are easily accessible to children.

"If this part of the fire escape had been properly cared for and kept in its proper place where it was intended to have been kept, and so it could not be reached from the ground except by some independent means, we would have had an entirely different situation."

Another case involving the matter of injuries to children in or near public streets or places is that of *Klingensmith et al, Admrs.* v. *The Scioto Valley Traction Co.*, 18 Ohio App., 290, is a case which occurred in this city and was decided by this Court of Appeals. The syllabus reads as follows:

"The rule that an owner of property owes a trespasser no

duty except to refrain from doing him a wilful wrong has no application to a structure erected and maintained in a public place for the support of high tension wires carrying electricity."

This of course relates to a tower supporting high tension wires on a public street. The Court in this case stated "that such a construction constituted a nuisance." The Court at pages 298-300, stated the following:

"In the case at bar the evidence shows that the defendant erected this tower not only in a public place, but upon a play-ground where children of tender years and other minors were wont to congregate to play, a fact known to the company, or which should have been known. It was there without any right from any public body having control of the street. In a technical sense the company itself was maintaining a nuisance. But independent of that fact, it was supporting at the top of this tower three wires, each carrying 27,000 volts of electricity. These wires held one of the most dangerous and deadly instrumentalities in use by man. Death by reason of the open access to such wires, was within easy reach. The average boy undoubtedly could climb the sides of that tower with as much ease as a squirrel would take an ordinary tree. The company, by reason of these facts, was bound to use the highest degree of care and skill in making that place safe to outsiders. From the evidence it appears that not one single thing was done by the company to prevent or warn people of the dangers lurking in and about that tower. The way was open to the top, and from all appearances free to all who would take the chance of going upon the tower, and the evidence shows that others did avail themselves of the opportunity to climb it. But this is not all. This structure held death from an agency not ordinarily known or understood by adults. It appears from the evidence that the decedent was first struck by what is known as a disruptive discharge or "brush." And it further appears from the evidence that from wires carrying such a high voltage as these involved here there are at times such disruptive discharges, which will cause death without actual contact with the wires. * * *

"We cannot endorse a rule which, under all the facts in this case, would completely absolve this company from exercising some active duty in protecting the public from the dangers of this structure, situated as it was, and considering the conditions surrounding it. We are unwilling to extend the rule of non-liability to trespassers to a case of this character. It is our conviction, under the authorities, and with a proper regard for the rights of the public, that it was the duty of the traction company to adopt some means to prevent people from going upon the tower, or at least to place appropriate warnings thereon so that persons attracted thereto by curiosity would have some understanding of the dangers which would surround them if they attempted to go upon such structure. We think our position on this matter is in harmony with the view of the court in the case of *Isaac Leisy Brewing Co.* v. *Kapl*, 22 C. C. (N. S.), 309."

In the case of *Crisafi et al* v. *City of Cleveland*, 169 Ohio St., 137, the Court stated that:

"Where, during the improvement and development of a public park in a municipality, the use of dynamite causes subterranean tremors which damage nearby property, the municipality is not liable in damages to the owner of such property under the municipality's duty imposed by Section 723.01, Revised Code."

The duty imposed there to keep its public grounds free from nuisance was limited to persons entitled to use and using such public grounds for the purposes for which they were created, in that case, a park.

In the case of *Ziehm* v. *Vale*, 98 Ohio St., 306, the Court stated:

"Where the owner of an automobile, upon returning to his car, finds an infant four and one-half years of age thereon, and twice drives the infant from the car, the owner is not thereby absolved from further duty towards such infant. Under such

circumstances, when the child still remains in close proximity to the car, the driver is required to exercise reasonable care to avoid injury to the child.''

Another case is that of *DeGroodt* v. *Skrbina*, 111 Ohio St., 108, the first syllabus reads as follows:

''For the purpose of preventing travel upon a newly constructed pavement, a contractor erected a barricade on the street, consisting in part of a two horse dump wagon which was permitted to be unsecured in a vicinity where children were accustomed to play therewith. This, together with the danger that might result to the children therefrom was brought to the knowledge of such contractor. A child under six years of age was injured by the dump wagon so placed; and if, under the circumstances, reasonable care was not exercised by the contractor in leaving the dump wagon in a secure condition, thereby causing the death of such child, the contractor becomes liable.''

The Court in that opinion at page 112 stated the following:

''So the case presented for the determination of the jury was whether the contractor, with the knowledge of the danger that might ensue in permitting the dump wagon to be unsecured in a locality where small children were continuously playing about, had exercised the care which ordinarily prudent men would have exercised under like circumstances. It may be conceded that the wagon was used as a part of the barricade by permission of the city authorities, but it must also be conceded that the lad had a lawful right to use the street. Although lawfully in the street, the courts divide upon the question whether a child becomes a trespasser by meddling with an instrumentality in the public street. But even if he be considered a trespasser, within the rule applied to private premises, if the contractor gained knowledge or information of the peril that might result to small children from the continued use of such instrumentality, a legal duty might arise which would require him to avoid that peril. In that respect, he would be required

to act as reasonably prudent men act under like circumstances. This rule of liability was fully covered and given to the jury in the charge of the trial court and we think it is supported by the following cases: *Lynch* v. *Nurdin*, 1 Q. B., 29, cited in the *Harriman case, supra; Westerfield* v. *Levis Bros.*, 43 La. Ann., 63, 9 South, 52; and *Kelley* v. *Parker-Washington Co.*, 107 Mo. App., 490, 81 S. W., 631, where the syllabus states the principle as follows:

"It is negligence for the owner to leave dangerous machinery on his premises in a condition likely to cause injury; and a contractor for grading a street who leaves a scraper in the street liable to inflict injury on children attracted thereby, is guilty of negligence and such children are not trespassers, since the contractor's possession of the street is not exclusive."

It is to be noted in that case the dump wagon had not been chained down which was contrary to a city ordinance.

A New Jersey case is that of *McGill et al* v. *United States*, 200 Fed. (2d), 873, and the first syllabus reads as follows:

"Under New Jersey law a possessor of land is subject to liability for bodily harm to young children trespassing thereon, caused by structure or other artificial condition which he maintains upon the land, if place where condition is maintained is one upon which possessor knows or should know that such children are likely to trespass, and condition is one which should be known to involve unreasonable risk of harm, and children do not, because of their youth, comprehend the risk, and the utility to the possessor of maintaining the condition is slight as compared to the danger to young children."

It is to be noted however that the New Jersey law as to attractive nuisances is directly contrary to the Ohio law as enunicated in the *Harvey case, supra.*

A Minnesota case is that of *Heitman* v. *Lake City*, 225 Min., 117, 30 N. W. (2d), 18, the third and eighth syllabus reading as follows:

"In action for wrongful death of seven year old child by drowning in small boat harbor maintained by city in center of recreational area, evidence that retaining wall from which child fell into water was in a state of disrepair, that original guard-rail had not been replaced after its destruction by ice, that surroundings as well as wall itself were attractive to children, that children frequently played on wall, and that only an occasional warning by harbor master was given, sustained recovery.

"A city is liable for bodily harm to young children caused by a structure or other artificial condition which it maintains upon premises possessed and operated in its proprietary capacity, if the place where the condition is maintained is one upon which the city knows or should know that children are likely to gather, if it realized or should realize that such condition involves an unreasonable risk, if the children by reason of their immaturity do not discover the condition or realize the risk, and if the utility to the city of maintaining the condition is slight as compared with the risk to young children."

Another Ohio case is that of *Zimanski* v. *Curro & Whittaker Co.*, 6 Ohio Law Abs., 117, the syllabus reading as follows:

"Rule that defendant owes no duty to child who comes upon premises without invitation held not to apply to machinery left in public street."

It is to be noted in that case the injury occurred upon a public street and the Court stated a more liberal rule was to be applied in favor of the child under such circumstances than set forth in the *Harvey case, supra.* The Court stated that in that case the child was 11 years old and was playing around a gasoline tank on a public street when one of the boys kicked the bucket and blew fire upon the plaintiff causing him to be burned. The Court stated that the defendant used no care to prevent the children from playing around the trench digger or from obtaining from the gasoline tank gasoline kept therein, and that a watchman had not properly attended to his duties relative to the machinery in the guarding of the same.

In the case of *Ohio Public Service Co.* v. *Alexander*, 6 Ohio Law Abs., 337, the first syllabus reads as follows:

"Duty of company having steel tower located in public street, used for supporting high tension wires, to use care, commensurate with danger, in order to prevent injury resulting to persons who should come in contact with tower. Under such circumstances, ordinary rule that owner owes no duty to trespasser, except to refrain from doing him wilful wrong, can have no application."

The Court in that case cited the *Klingensmith case, supra.* In the case of *Gottesman, Admr.,* v. *City of Cleveland*, 142 Ohio St., 410, the first syllabus reads as follows:

"A prima facie case for recovery of damages for nuisance is established by evidence that a municipality permitted corrugated pipes to remain without being blocked or secured in any way in one of its public parks for a long period of time during which children played with them by getting inside and causing them to roll about, all with the knowledge of the municipality, and a child under 5 years of age was killed by one of such pipes being rolled over him by other children who were inside such pipe."

In the case of *Coy* v. *The Columbus, Delaware & Marion Electric Co.*, 125 Ohio St., 283, the Court stated the following:

"Where the statical condition of premises is made perilous by the active and negligent operation of apparatus thereon by the person owning or controlling the same, a liability arises for injury resulting therefrom.

"A petition alleging in substance that a company maintains and operates an electrical transformer charged with a powerful and dangerous electric current, situated and in active operation upon premises continuously frequented by children for a number of years, with the knowledge of such company, and further that such company failed to keep in repair a picket fence surrounding such transformer, but allowed the railings of the

same to rot and decay, and the pickets to become loose, thereby leaving openings in such fence large enough for persons to enter, and that a child coming in contact with such transformer was injured, states a cause of action.''

It is to be noted in that case that the fence around said transformer was in a bad state of repair.

The matter then before the Court is whether or not the petition states a cause of action. It is a well accepted principle of pleading that a defect must appear on the face of the petition to be the basis of a demurrer. See Section 2309.08, Revised Code.

In ruling on a demurrer the pleading must be liberally construed in favor of the pleader in the interest of justice. See Section 2309.40, Revised Code. It is also a well established principle of pleading that in considering a demurrer the Court must consider the allegations plead as true.

The cases listed above relative to injuries to children on or near public places or streets are different than those occurring on private property. The cases seem to place great responsibility upon those parties where the instrumentality is located near or on a public street or place regardless of the fact the child may be a trespasser. It is to be noted that the second amended petition in part reads as follows:

''Plaintiff further says that said pipe line was accessible to children from both sides of said Hargus Creek; that children frequently entered the area wherein the pipe line was situated; that said children walked on said pipe line across said creek; that these facts were known, or with the exercise of ordinary care and diligence should have been known, to the defendant; that the defendant did nothing to conceal the said pipe line or to prevent children from entering thereon.

''Plaintiff further says that on or about May 5, 1958, George Michael Stevens, deceased, age 8 years, in the company of other children of tender age, went upon said pipe line and while playing thereon, slipped and fell therefrom into the creek below.''

The question then to be decided is whether or not the pipe line here as such constituted a nuisance such as an electric transformer in the case listed above, in the way the same was built and whether or not a fence not being constructed around said pipe line was the reason for the boy to be playing thereon. Another factor is whether or not the decedent went on to said pipe line over the bridge or went around the bridge where a fence would have been located. As to the question of a nuisance the matter is that of forseeability and such an allegation appears in this petition.

The Court is therefore of the opinion that the allegations as contained in the second amended petition being liberally construed in favor of the pleader and in view of the cases noted above and the law of this state that said second amended petition does state a cause of action and therefore the demurrer will be overruled. Proper exceptions will be saved to the defendant.