WISE ET AL., *v.* NORFOLK & WESTERN RAILWAY COMPANY ET AL.

(No. 51751—Decided July 19, 1984.)

Court of Common Pleas of Cuyahoga County.

*Douglas K. Fitner,* for Patricia Wise and Dana Wise.

*Bryon D. Fair,* for Norfolk & Western Ry. Co.

*Donald J. Swetland,* for city of Lakewood.

GRIFFIN, J. This is an action for negligent infliction of personal injuries arising from plaintiff Dana Wise's fall from a railroad bridge. Plaintiffs sued defendants, Norfolk & Western Railway Company, which owns and maintains the bridge, and the city of Lakewood, Ohio, the municipality in which the bridge is located. The case is currently before the court on Norfolk & Western's motion for summary judgment.

The complaint alleges that defendants "owned, maintained and controlled" the railroad bridge and that Dana Wise suffered "serious injury as a direct and proximate result of the

negligence of defendants" when she fell from the bridge while using it to cross a street.

Defendant Norfolk & Western claims in its motion for summary judgment that Dana Wise was a trespasser toward whom it violated no duty. It relies on the deposition of Dana Wise. Plaintiff claims that she was not a trespasser because the defendant "acquiesced" in her use of the bridge.

The undisputed facts, as revealed through Dana Wise's deposition testimony, are as follows:

On September 12, 1981, the date of this accident, Dana was eleven years old and lived on Webb Road in Lakewood, Ohio, about a block and a half from the railroad track. The accident occurred on a Saturday when, according to Dana, at about noon, she and some friends, Darcy Nicholson, Melissa and Jonathan (sister and brother but she did not know their last name), were going to get a pizza at a store on Sloan Avenue. The other children were younger than Dana, with Jonathan, the youngest, being about six years of age.

The children walked south on Webb Road to the crossing of the Norfolk & Western tracks with Webb Road and then proceeded to walk along the railroad tracks toward West Clifton Road (westerly direction).

At West Clifton Road, there is a grade separation of the railroad right-of-way with the street. Two pairs of railroad tracks cross a number of feet above street level by means of a bridge. The design of the bridge is such that there are two separate spans, one for each pair of tracks of the right-of-way. Each span has an abutment or trestle on each side so that in the middle, the abutments or trestles at track level are about eighteen inches apart.

Defendant's evidence shows that the bridge had been used frequently enough by pedestrians that they had painted graffiti on the track side of two inner guardrails. The railroad bridge was frequently used by neighborhood children as a short-cut. Where the two spans cross the street there are guardrails, but no effort was made by the railroad to close the ends of the eighteen inch wide opening between the spans so that a person was obstructed from trying to walk between the spans by straddling them.

Upon reaching the bridge over West Clifton Road, Dana and Melissa attempted to cross by walking in the eighteen inch separation between the two abutments or trestles in the center of the right-of-way. Darcy and Jonathan walked along the gravel portion of the right-of-way near the tracks. Dana attempted to walk in the eighteen inch separation between the two abutments or trestles by placing her feet on a ledge at the lower part of the abutment or trestle on each side. Beneath her was a clear and open fall to the street. About half-way across, Dana lost her footing and she fell to the street below, resulting in her injuries.

Norfolk & Western seeks summary judgment on the ground that it owed no duty to Dana Wise, a trespasser on the property, and, therefore, cannot be found negligent. Plaintiffs oppose the motion stating, essentially, that defendant owed a duty to protect children who it could foresee would enter upon the railroad trestle and be injured.

*Brooks* v. *Norfolk & Western Ry. Co.* (1976), 45 Ohio St. 2d 34 [74 O.O.2d 53], a unanimous opinion concurred in by then Justice Frank D. Celebrezze and by Justice William B. Brown, sets forth the current Ohio law in its syllabus relative to duties to trespassers:

"Where the status of plaintiff is that of a trespasser on a railroad right-of-way * * * recovery can *only* be had *against* the railroad if the record demonstrates wanton misconduct on its part * * *." (Emphasis added.)

The court further stated at 38:

"[F]ailure to prevent trespass is not negligence in Ohio. * * * [T]he failure of a railroad to fence its right-of-way

against trespassers is not negligence * * *."

In the *Brooks* case, plaintiff had been playing in a city park bisected by a railroad right-of-way. He was injured when he hitchhiked on a slow-moving train and fell.

Plaintiff in this case, not having alleged wanton misconduct, attempts to avoid the consequences of the *Brooks* case by claiming that she was not a trespasser and that the existence of graffiti on the guardrail of the railroad trestle plus the common usage of the trestle by pedestrians were evidence that the railroad had acquiesced in people walking on the trestle. In short, plaintiff claims to be a licensee.

It is important to note, however, that none of this evidence shows that anyone had ever attempted to walk on the right-of-way as Dana did by straddling the eighteen inch separation or, if such action occurred, that the railroad had notice of it.

*Ramsey* v. *Piketon* (1961), 115 Ohio App. 153 [20 O.O.2d 259], sets forth the duty of a landowner to a licensee at 155:

" 'The possessor of lands owes no duty to a licensee to warn or to employ care to protect him from ordinary risks incident to the condition of the premises, even though such licensee is a child so immature as to be unable to appreciate danger * * *.' "

Historically, liability to a licensee accrued when the hazard causing the injury was due to "active negligence," *i.e.,* active and negligent operation of some instrumentality on the land. No liability accrued when the injury resulted from some static condition of the land where the dangers were obvious. *Sharp Realty Co.* v. *Forsha* (1930), 122 Ohio St. 368; *Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176; *Ramsey* v. *Piketon, supra; Elliman* v. *Gombar* (1949), 86 Ohio App. 352 [41 O.O. 382]; *Moran* v. *Wehrung* (App. 1951), 61 Ohio Law Abs. 212.

A more recent case, however, suggests that the distinction between active negligence and static condition is not useful, at least in cases involving social guests' injuries. *Di Gildo* v. *Caponi,* (1969), 18 Ohio St. 2d 125 [47 O.O.2d 282], involved a young child — a social guest — who was injured when he entered his host's unlocked car and ultimately suffered injury to his hand when the car door closed on it. It was undisputed that neither the host nor the child's father knew that the child had entered the car. In response to defendant's argument that the parked, albeit unlocked car, was a static condition, the court stated that, as to social guests, it rejected the active-static distinction and upheld the following jury instruction:

"The test is whether in the light of all the attending circumstances, all of them, a reasonably prudent person would have anticipated that injury was likely to result to *someone* from the performance of the act in question." *Id.* at 130.

The same concepts of active negligence and static condition are addressed in a clearer formulation in Section 339 of 2 Restatement of the Law 2d (1965) 197, Torts:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are

slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children."

The policy in the Restatement was, in effect, followed in *Stevens* v. *Ohio Fuel Gas Co.* (C.P. 1960), 92 Ohio Law Abs. 1 [26 O.O.2d 345]. In that case, an eight-year-old boy was killed when he fell from a pipeline which was affixed to a public bridge. The complaint read in part:

"Plaintiff further says that said pipe line was accessible to children from both sides of said Hargus Creek; that children frequently walked on said pipe line across said creek; that these facts were known, or with the exercise of ordinary care and diligence should have been known, to the defendant; that the defendant did nothing to conceal the said pipe line or to prevent children from entering thereon."

The court determined that the pipeline was easily accessible to children and that the defendant knew or should have known that children frequently walked on the pipeline. After reviewing and distinguishing the facts of several Ohio decisions which relied upon the active negligence/static condition theory, the court concluded that the complaint stated a cause of action and that the issues to be decided by the trier of fact were:

"* * * whether or not the pipe line here as such constituted a nuisance such as an electric transformer in the case listed above, in the way the same was built and whether or not a fence not being constructed around said pipe line was the reason for the boys to be playing thereon. Another factor is whether or not the decedent went on to said pipe line over the bridge or went around the bridge where a fence would have been located. As to the question of a nuisance the matter is that of foreseeability * * *." *Id.* at 19.

Thus, the court construed the issues pursuant to the Restatement formulation by rejecting the difficult active negligence analysis in favor of a "totality of the circumstances" analysis.

The Restatement analysis permits a court to balance the traditional shield of landowners against liability to infant trespassers or licensees with practical realities and facts as to the nature of the danger and the foreseeability of injury. It is clearly a more common-sense approach and provides greater equity than the historically used analyses. In light of the Supreme Court's suggestion in *Di Gildo, supra,* that semantic exercises are of no value, the Restatement approach is the proper analysis to apply to the case presently before the court. Cf. *Morselli* v. *Mintz Construction Co.* (Sept. 23, 1980), Cuyahoga C.P. No. 989, 533, unreported, at 4.

Under the principles of the Restatement, jury issues in this case exist as to the cost and practicality of closing the eighteen inch separation between the bridge by a screen fence, cover, or otherwise; the foreseeability that a child might attempt to walk it and fall as Dana did; and Dana's perception of the danger.

In short, Section 339 of the Restatement is equally applicable to a concept of negligence or to a proper definition of the standard of "wanton misconduct" enumerated in the syllabus of *Brooks, supra.* The application of *Brooks* should be limited to its facts and to the issue of fencing an entire right-of-way rather than a small, uniquely hazardous portion within the right-of-way.

The motion for summary judgment is denied.

*Motion for summary judgment denied.*